**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

EXTREME LLC, et al.,

Plaintiffs,

v.

EXTREME ELECTRONICS CORPORATION;
STEPHENSON GLASCOE; LINDA
GLASCOE Y LA SOCIEDAD LEGAL DE
GANANCIALES COMPUESTA POR AMBOS,

Defendants.

Civil No. 17-1347 (DRD)

## OPINION AND ORDER

On February 24, 2017, Plaintiffs Extreme LLC ("Extreme") and Jeffrey Juniper ("Juniper") (collectively, "Plaintiffs") filed the instant case alleging that Defendants Extreme Electronics Corporation ("Electronics"); Stephen Glascoe[1] ("Glascoe"); Linda Glascoe ("Linda"); and the conjugal partnership composed by both of them (collectively, "Defendants") are liable for economic losses suffered by Plaintiffs due to Defendants' defamation of, and lies related to, Plaintiffs' business.

---

[1] There was a discrepancy regarding the correct spelling of the Defendant's name. The Complaint stated the Defendant's name as "Stephenson Glascoe" (*see* Docket No. 1-1) whereas the Notice of Removal included a footnote explaining that the correct spelling was "Stephen Glascoe" (*see* Docket No. 1). Finally, the Sworn Statement provided by the Defendants stated the Defendant's name as "Steven Glascoe" (*see* Docket No. 8-1). For effects of this Opinion, we shall refer to the Defendant as "Stephen Glascoe," which was how he signed the above-mentioned Sworn Statement.

Pending before the Court is Defendants' unopposed *Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Cause of Action* (Docket No. 11). Defendants allege Electronics lacks sufficient contacts with Puerto Rico to support personal jurisdiction over them. For the reasons discussed herein, Defendants' *Motion to Dismiss* (Docket No. 11) is hereby **GRANTED**.

## I.   FACTUAL ALLEGATIONS

Defendant Electronics is a Pennsylvania corporation with its principal place of business and headquarters located at 5289 Pottsville Pike, Reading, PA, 19605. Stephen Glascoe, President of Electronics, and Linda Glascoe reside in 5289 Pottsville Pike, Reading, Pennsylvania, 19605. *See* Docket No. 1-1 ¶1.

Plaintiff Extreme is a Puerto Rico corporation duly organized under the laws of Puerto Rico with its principal place of business and headquarters at 1507 Ashford Ave. #802, San Juan, Puerto Rico 00911. Id. However, Jeffrey Juniper, manager and member of Extreme, has homes at 1007 N Federal Highway, Suite 279, Ft. Lauderdale, Florida, 33304 and at 1507 Avenida Ashford #802, San Juan, Puerto Rico, 00911. Id.

According to the complaint, in June 2016, Plaintiff Juniper started negotiations, through Extreme LLC, to acquire some assets, namely, GPS Trackers, from Electronics. Defendant Stephen Glascoe would receive money and a percentage of ownership in Extreme as part of the deal.

2

Plaintiffs allege that Defendants had told Plaintiffs that Defendants had an exclusive license to distribute the GPS trackers in Puerto Rico as well as had a list of contacts of Puerto Rico-based boat fleets and motor vehicle dealers willing to sell the GPS trackers. As part of the alleged transaction between the parties, Defendant would provide Plaintiffs with a list of GPS trackers for motor vehicles and boat fleets which it could then sell to the list of contacts provided by Defendants. See Docket No. 1-1 ¶6.

According to the Complaint, after the initial negotiations were finalized, Plaintiffs advanced one hundred twenty thousand dollars ($120,000) to Defendants. Nonetheless, per the factual allegations in the complaint, it seems that Plaintiffs have yet to lose any current or prospective clients. However, the agreement wherein Extreme would acquire Electronics' GPS trackers and the license to distribute to them was never finalized because Plaintiffs found that Defendants did not have an exclusive license for the sale and service of GPS trackers in Puerto Rico. Additionally, Plaintiffs allege that Defendants' did not provide Plaintiff Juniper with the GPS trackers, contacts, or clients that they said they would provide. See Docket No. 1-1 ¶7.

In January 2017, Plaintiffs once again offered Defendant Glascoe the possibility to work with Extreme and grant five

percent (5) ownership of the entity as long as the co-defendants complied with confidentiality requirements, non-competition requirements, and Puerto Rico Act 20 requirements which promote the establishment of foreign exportation services in Puerto Rico. Defendant Glascoe ignored the offer. See Docket No. 1-1 ¶9. Plaintiffs aver that Defendants then illegally changed invoices provided by Extreme to Extreme's clients to reflect Electronics' name. Plaintiffs also allege that Defendant Glascoe requested that several of Extreme's clients pay Electronics without providing the services nor paying for the merchandise. See Docket No.1-1 ¶9.

Plaintiffs argue that Defendant Glascoe falsely stated that he was the owner of Electronics, that Electronics had the exclusive license for the sale of the GPS trackers, and that Plaintiffs did not have said license. Plaintiffs understand that through the appropriation of Extreme's clients, Defendants received payments between seven thousand five hundred and ten thousand dollars ($7,500-$10,000). Because of this, Plaintiffs have been obligated to provide explanations to its clients and risk losing their clients. Nonetheless, per the factual allegations in the complaint, Plaintiffs have yet to lose any clients. See Docket No. 1-1 ¶12. Plaintiffs therefore demand the return of the one hundred twenty thousand dollars ($120,000) that Plaintiff Juniper alleges having paid to Defendants in

advance for their GPS equipment and the list of potential clients. Plaintiffs also demand one million dollars ($1,000,000) in payment for Defendants' having ruined Extreme's reputation which has in turn caused Plaintiff's economic loss.

## II.   FED R. CIV. P. 12(B)(2) STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(2)"Rule 12(b)(2)"), a defendant may move to dismiss a complaint for lack of personal jurisdiction. Where, as here, the Court refrains from holding an evidentiary hearing, the Court applies the "prima facie" standard. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618-19 (1st Cir. 2001)(internal citations omitted); *see generally* International Trading Partners, Inc. v. Cobra Scooters, LLC, 403 F. Supp.2d 180, 183 (D.P.R. 2005).

Per the "prima facie" standard, the plaintiff is responsible for establishing that the Court has personal jurisdiction over the defendants. Swiss Am. Bank, 274 F. 3d at 618. However, to do so, the plaintiff may not rely on the pleadings. Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 23 (1st Cir. 2007)(internal citations omitted). Rather, the plaintiff must submit properly supported facts and "make affirmative proof." Id. The plaintiff's evidence is assumed to be accurate and it is viewed in the light most favorable to the plaintiff. Astro-Med, Inc. V. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009)(internal citations omitted). A defendant's

evidence is only relevant to the extent that it is uncontested by the plaintiff. Id. Here, Defendants' evidence and allegations are uncontested as Plaintiff has not opposed Defendants' *Motion to Dismiss*. See PRD Local Rule 7(b) ("[u]nless within fourteen (14) days after the service of a motion the opposing party files a written objection to the motion, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection.")

### III. DISCUSSION

To establish the Court's personal jurisdiction over a party, Plaintiffs must satisfy both Puerto Rico's long-arm statute and the Due Process Clause of the Fourteenth Amendment. Negron-Torres, 478 F.3d at 24 (citing Swiss Am. Bank, 274 F.3d at 618). Puerto Rico's long-arm statue confers Puerto Rico's courts with jurisdiction over a non-resident defendant if said defendant either "(1)[t]ransacted business in Puerto Rico personally or through an agent"; or (2) "participated in tortuous acts within Puerto Rico personally or through his agent." Id. (quoting P.R. Laws Ann. tit. 32, App. III, R. 4.7(a)(1)). As Puerto Rico's long-arm statute extends jurisdiction to the maximum limits set forth by the

Constitution, the due process analysis is determinative.  Id. (internal citation omitted).[2]

Under the Due Process Clause, a plaintiff must prove the existence of either specific or general jurisdiction.  Negron-Torres, 478 F.3d at 24 (citing Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005)).  The turning point in determining whether there exists personal jurisdiction is "the existence of 'minimum contacts' between the nonresident defendant and the forum."  Id.  Therefore, the Court must find that the nonresident defendant maintains sufficient "minimum contacts" with Puerto Rico so as to comport to "traditional notions of fair play and substantial justice" and be subject to the Court's jurisdiction.  See  Int'l Shoe Co. v. Wash. Office of

---

[2] The contacts requirement necessary under Puerto Rico's long-arm statute is a mirror image of the contacts necessary under Federal Law. See A.H. Thomas Co. v. Superior Court, 98 P.R.R. 864, 870 (1970) wherein Puerto Rico's Supreme Court, by interpreting earlier federal jurisprudence, elaborates three rules to determine in personam jurisdiction over a nonresident:

1. The nonresident defendant must do some act or consummate some transaction within the forum. It is not necessary that defendant's agent be physically within the forum, for this act or transaction may be by mail only. A single event will suffice if its effects within the state are substantial enough to qualify under Rule Three;
2. The cause of action must be one which arises out of, or results from, the activities of the defendant within the forum. It is conceivable that the actual cause of action might come to fruition in another state, but because of the activities of defendant in the forum state there would still be 'a substantial minimum contact;"
3. Having established by Rules One and Two a minimum contact between the defendant and the state, the assumption of jurisdiction based upon such contact must be consonant with the due process tenets of 'fair play' and 'substantial justice.' If this test is fulfilled, there exists a 'substantial minimum contact' between the forum and the defendant. The reasonableness of subjecting the defendant to jurisdiction under this rule is frequently tested by standards analogous to those of forum non conveniens.

(internal citations omitted).

Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945). Finally, the "minimum contacts" standard has several requirements which the plaintiff's must comply. As such, the First Circuit has stated that:

> [f]or specific jurisdiction, the plaintiff's claim must be related to the defendant's contacts. For general jurisdiction, in which the cause of action may be unrelated to the defendant's contacts, the defendant must have continuous and systematic contacts with the state. Second, for either type of jurisdiction, the defendant's contacts with the state must be purposeful. And third, the exercise of jurisdiction must be reasonable under the circumstances.

Harlow, 432 F.3d at 57.

### A. Specific Jurisdiction

Specific jurisdiction over a nonresident defendant exists "where the cause of action arises directly out of, or related to, the defendant's forum-based contacts." United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089-91 (1st Cir. 1992). The First Circuit divides specific jurisdiction into a tripartite analysis: relatedness, purposeful availment, and reasonableness. See Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 135 (1st Cir. 2006) (internal citation omitted). The First Circuit also states that "[a]n affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction."

Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).

With regards to the first requirement, the First Circuit has emphasized that causation is central to a relatedness finding. This means that "[t]he relatedness requirement is not an open door; it is closely read, and it requires a showing of a material connection.... A broad 'but-for' argument is generally insufficient. Because 'but for' events can be very remote,... due process demands something like a 'proximate cause' nexus." Negron-Torres, 478 F.3d at 25 (quoting Harlow, 432 F.3d at 61-62)(internal citations and quotations omitted). In essence, the relatedness factor dictates that the Court must "ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum." Phillips Exeter Academy, 196 F. 3d at 288.

In the case at bar, the relatedness element requires a "nexus" between defendants' contacts with Puerto Rico and plaintiffs' injury "such . . . [that] the litigation itself is founded directly on those activities." Mass. Sch. Of Law at Andover v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). Plaintiffs here allege that Defendants are liable for their economic losses in Puerto Rico due to Defendants' continued defamation of Extreme's name to Plaintiffs' Puerto Rico clients. However, Plaintiffs presented no proof, such as letters which

Defendants might have sent to Extreme's clients or provided phone records, which can attest to their allegations that Defendants contacted Extreme's clients and insulted Extreme.

The relatedness inquiry in the current tort claim concerns whether Electronics' contacts with Puerto Rico were the "cause in fact" and "legal cause" of Plaintiffs' cause of action. Mass. Sch. of Law, 142 F.3d at 35 (internal citations and quotations omitted); Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 715 (1st Cir. 1996); *see generally* Hogar CREA Inc. v. Hogar CREA Intern. Of Connecticut, Inc., 708 F. Supp.2d 158, 167(D. P.R. 2009) (holding that the plaintiff's did not identify the applicable state law on which they based their tort claim and this in turn failed to demonstrate how they intended to meet their burden of demonstrating forum contacts in relation to the tort claim). As well, the First Circuit has repeatedly stated that, specifically in a claim such as the present defamation claim, cause in fact refers to whether "the injury would not have occurred 'but for' the defendant's forum-state activity" whereas legal cause refers to whether "the defendant's in-state conduct gave birth to the cause of action." Callahan v. Harvest Bd. Intern., Inc., 138 F.Supp.2d 147 (D. Mass. 2001) (citing Mass. Sch. of Law, 142 F.3d at 35 (internal citations omitted)).

Defendants' contacts with Puerto Rico consist of one phone call and one trip to Puerto Rico to meet with Plaintiff Juniper.

*See* Docket No. 8-1. These two instances of contact with Puerto Rico are insufficient to support jurisdiction, particularly as they are not causally related to Plaintiffs' injuries. Moreover, while Plaintiffs allege that negotiations of the deal between the parties took place on the Island (Docket No. 1-1 ¶3), Defendant provided a Sworn Statement detailing that the parties met once in person, per invitation of Plaintiff Juniper himself. See Docket No. 8-1. Co-defendant Stephen Glascoe also stated that he never spoke to any automobile dealer or boat vessel dealer regarding the sale of its GPS trackers in Puerto Rico, neither by telephone or through e-mail. Id. In regards to Defendant Linda, co-defendant in the claim, she stated that she never spoke to any automobile dealer or boat vessel dealer located within Puerto Rico. Furthermore, she did not attend any meeting in Puerto Rico with Plaintiff Juniper or anyone affiliated with Extreme. See Docket No. 8-2. Currently, these Sworn Statements are unopposed, as such Plaintiffs waived any objection and the information contained therein. See PRD Local Rule 7(b) ¶1.

Plaintiffs, therefore, cannot establish that the injury they claim related to the defamation of Extreme occurred specifically due to Defendant Electronics' actions in Puerto Rico. They do not provide any specific evidence which proves that Defendants' in-state conduct gave rise to Plaintiffs' tort

claim. In fact, the only "proof" that Plaintiffs included in the Complaint as evidence that Electronics was allegedly contacting Extreme's clients in order to provide services for the GPS trackers is an email sent by Linda to an Accounting department (allegedly belonging to one of Plaintiff's clients) (see Docket No. 1-1 ¶9). In said e-mail she instructs the department to not remit any payments to Extreme LLC or Jeff Juniper and to void all pending invoices for Extreme LLC. See Docket No. 1-1, Exhibit B. This is insufficient to prove that Electronics' has defamed Extreme's name and caused its economic loss.

Consequently, Plaintiffs do not meet the requirements of the relatedness test, as Defendants' contacts with Puerto Rico were not the proximate cause of Plaintiffs' injuries. See Burger King v. Rudzewicz, 471 U.S. 462, 486 (2003) ("The "quality and nature" of an interstate transaction may sometimes be so "random," "fortuitous," or "attenuated" that it cannot fairly be said that the potential defendant 'should reasonably anticipate being haled into court' in another jurisdiction.") (internal citations omitted). Further, in the case at bar, Defendants' contacts with Puerto Rico do not reach the requisite threshold, as there is no "in-state conduct" forming "an important, or at least material, element of proof." United Elec., 960 F. 2d at 1089 (quoting Marino v. Hyatt Corp., 793

F.2d 427, 430 (1st Cir. 1986))(internal quotations omitted).  As such, the Court lacks specific jurisdiction over Defendants.

Likewise, in terms of the alleged $120,000 dollars that Plaintiff paid in advance to Defendants at the outset of the negotiations (*see* Docket No.1-1 ¶6), Plaintiffs provided no record of where the transaction itself occurred (whether in Puerto Rico or stateside) or even if it occurred in the first place. See Verde Capital Corp. v. Lausell Aluminum Jalousies, Inc., 729 F. Supp. 92, 93 (S.D. Fla. 1989) wherein the Southern District of Florida stated that "standing alone, a promise to make payments in the forum state does not constitute minimum contacts and therefore does not comport with the due process clause." In the case at bar, while there was an alleged "promise" of a payment and a supposed payment, since Plaintiffs have provided no proof of said transaction, this is also insufficient to establish specific jurisdiction or minimum contacts over Defendants.

### B. General Jurisdiction

Federal district courts have general jurisdiction when "the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." Negron-Torres, 478 F.3d at 25 (citing United Elec., 960 F.2d at 1088). Plaintiffs aver that Electronics has

engaged in continuous and systematic activity in Puerto Rico by calling its clients and by stating libelous claims against Plaintiffs. Plaintiffs' arguments however do not support a finding of general jurisdiction with regards to Electronics' contacts in Puerto Rico as Plaintiffs have provided no evidence that Defendants, even if they were located in Pennsylvania, contacted any of Extreme's clients. For example, not even phone records or even client complaints stating that Electronics contacted them were provided for the Court in an attempt to prove that the Court should exercise jurisdiction over Defendants.

### Corporate Contracts and Minimum Contacts

The Supreme Court has repeatedly stated that a "corporate personality is a fiction." Int'l Shoe Co., 326 U.S. at 316-317. As such, the Supreme Court has likewise stated that:

> To say that the corporation is so far 'present' there as to satisfy due process requirements, for purposes of taxation or the maintenance of suits against it in the courts of the state, is to beg the question to be decided. For the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there.

Id.; Martinez v. Aero Caribbean, 764 F. 3d 1062 (9th Cir. 2014).
In *Martinez v. Aero Caribbean*, the Ninth Circuit held that that
in-state service of process on an officer of a foreign
corporation was not sufficient under due process clause for a
court to have personal jurisdiction over the corporation, even
if the officer was acting on behalf of corporation. *See*
Martinez, 764 F. 3d at 1062.   This is especially true
considering that "[a] court may exercise general personal
jurisdiction over a corporation only when its contacts 'render
it essentially at home'". Id. at 1064.   The Court also held
"that the "paradigm" fora for general jurisdiction are a
corporation's place of incorporation and principal place of
business." Id. at 1070. Here, as stated in the unopposed Motion
to Dismiss, Defendants alleged that "home" and their principal
place of business is Pennsylvania. See Docket No.11.

The *International Shoe* court also explained that a "casual
presence . . . or even his conduct of single or isolated items
of activities in a state on the corporation's behalf are not
enough to subject it to suit on causes of action unconnected
with the activities there." Int'l. Shoe Co., 326 U.S. at 159
(citations omitted).   In the case at bar, Defendant Glascoe only
had a minimal presence in Puerto Rico, for one night only. *See*
Docket No. 8-1. Likewise, any negotiations that Defendants had
with Plaintiff Juniper for the sale of Electronics' GPS

equipment and client lists occurred via telephone. Id. Nothing in the record reflects Defendants' intention to establish systematic ties with Puerto Rico.

While it is a heavily disputed topic among lower courts whether a contract is sufficient to establish "contact" with a specific forum, the Supreme Court has normally abided by the idea that if "the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum . . . . the answer clearly is that it cannot." Burger King, 471 U.S. at 478. Instead contracts must be analyzed in light of the negotiations that happened before the signing of the agreement and the potential future consequences that the same might have. See Id. at 479.

Here, Plaintiffs failed twice to reach any type of agreement with Defendants. Defendants ignored both offers. See Docket No. 1-1 ¶9. It is clear then that Defendants contacts with Puerto Rico, in light of the fact that no formal agreement was ever reached between the parties, are not sufficient to establish minimum contacts with the Forum. See generally TXU Energy Retail company, LP v. Emanuel Medical Center, Inc., 2003 WL 21281651, at *1 (N. D. Tex. May 28, 2003) (Holding that the defendant's conduct of regularly entering into short-term contracts for the purchase of natural gas from Texas

corporations was not sufficiently continuous and systematic to warrant jurisdiction over the corporation).

Finally, the Supreme Court has emphasized that in contract negotiations, the party which "reaches out" of its forum to establish a relationship with another party, might be subject to the other party's jurisdiction in case of a possible suit. The Supreme Court could not be any clearer as when it states that parties who "in interstate contractual obligations, . . .'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King, 471 U.S. at 478 (internal citations omitted). Here, Plaintiffs, having "reached out" to Defendants located in Pennsylvania in order to conduct business with them, are subject to the jurisdiction of Pennsylvania, not the other way around.

### *Extreme Electronics' Contacts with Puerto Rico*

Plaintiffs argue that Defendants have sufficient minimum contacts in Puerto Rico, standing alone, to warrant the exercise of personal jurisdiction.  The Court, as has been previously dictated by the First Circuit, may exercise general jurisdiction over Electronics if Plaintiffs establish the following three requirements: (1) Electronics has sufficient contacts with Puerto Rico; (2) that said contacts with Puerto Rico are

17

purposeful; and (3) maintaining jurisdiction is reasonable. Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 32 (1st Cir. 2010)(citing Harlow, 432 F.3d at 57). At first glance, it seems, like the Court has general jurisdiction over Defendant Electronics. However, after analyzing the underlying allegations, we conclude that maintaining jurisdiction would not be reasonable under the current circumstances. *See* Cossaboon, 600 F.3d at 33.

In order to analyze the reasonableness inquiry, courts weigh the following "Gestalt factors," which "serve to assist the court in achieving substantial justice." (Rodríguez v. Dixie Southern Indus., Inc., 113 F. Supp. 2d 242, 53, P.R. D. 2000). In a close case, they may even "tip the constitutional balance of the court's analysis." Id. These factors include:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Id. (citing Ticketmaster-New York, Inc. v. Alioto, 26 F. 3d 201, 209 (1st Cir. 1994).

As to the first factor, the Court notes that Defendant's burden of appearing in Puerto Rico would be substantial. As Puerto Rico's District Court has stated, "[i]t will almost always be burdensome for a defendant to defend itself in a

18

foreign jurisdiction." Rodríguez, 113 F. Supp. 2d at 253.    In the present case, it would be burdensome for Defendants to have to appear in the local District Court considering that they have never conducted business in Puerto Rico, nor own any property or bank accounts in the Island. See Docket Nos. 8-1 and 8-2.    Thus, the first factor weighs in Defendants' favor.

The second, third, and fourth factors weigh in Defendant's favor as well. The Defendants contend that Plaintiffs do not have a valid cause of action. The Plaintiffs claim that the continued defamation of Extreme as well as the lies that the Defendants allegedly said about the entity have caused Extreme to suffer economic loss. However, Plaintiffs have not provided any specified allegations as to the libelous statements made by Defendants which have negatively affected their business. In order to prove a defamation tort, regardless if its libel (written) or slander (oral), under Puerto Rico law defendants must prove the following three requirements "1) that the alleged supposed defamatory statements are false; (2) that the defamatory statements (written or spoken) were negligently made to another; and (3) that the plaintiff suffered damages." Ojeda-Rodríguez v. Zayas, 666 F. Supp. 2d 240, 254-255 (D.P.R. 2009) (citing Torres Silva v. El Mundo, Inc., 106 D.P.R. 415, P.R. Office Trans. 581 (1977). In the present case, however, Plaintiffs have failed to present to the Court specific

19

statements which demonstrate false claims made against Plaintiffs by Defendants. The Plaintiffs simply allege, in a conclusory manner, that "the damage that has been done and continues to be done by the defendant against plantiff, *can cause plaintiff to loose* [sic] *its clients and its business on the sale and servicing of GPS trackers*" (Docket No. 1-1 ¶13) (emphasis ours). These statements are inadequate to demonstrate that Defendants' actions are the cause of Extreme's economic loss.

Defendants also argue that the appropriate forum to litigate this dispute is the state of Florida, where both parties do business. This argument is based on the fact that the majority of Electronics' business is in Florida (Docket No. 8-1) and Plaintiff states in the Complaint that his address is in the state of Florida. See Docket No. 1-1 ¶1.

Finally, the fifth and final factor as well weighs heavily in the Defendants' favor.  In the case at bar, there is no evidence whatsoever that Defendants' contacts with Puerto Rico, as minimal as they are, contributed to the harm suffered by Plaintiffs.  Therefore, "policy considerations weigh heavily against subjecting a foreign corporation to litigate a case in federal court when said corporation did not directly cause Plaintiffs' harm." Muniz v. Walgreen Co., 46 F. Supp. 3d 117 (D. P.R. 2014).  Most notably, in the Complaint, plaintiffs stated

that "[t]his case has no impact over the public interest since it's related to a business transaction between two private parties." *See* Docket No. 1-1 ¶13.

Under these circumstances, Plaintiffs have failed to establish any minimum contacts which may grant Puerto Rico with the jurisdiction to see their contractual claims against Defendants as there was no contract agreed upon. They have provided no proof which gives rise to their claims of *libel per quod* as the announcements shared do not comply with elements of *libel per quod* set forth in case law. *See* F.A.A. v. Cooper, 566 U.S. 284, 295-297 (2012). Moreover, they have provided no proof or allegations in the complaint, bank records or otherwise, of any bank transactions ever having occurred within the Puerto Rican forum regarding the collection of the $120,000 dollars.

Hence, exercising general jurisdiction over Electronics to entertain Plaintiffs' causes of action would be unreasonable, especially given the fact that Plaintiffs can file suit in a Florida state court. Accordingly, Defendants' *Motion to Dismiss for Lack of Personal and Subject Matter Jurisdiction* (Docket No. 11) is hereby **GRANTED**.

### IV.   CONCLUSION

For the aforementioned reasons, the Court hereby **GRANTS** Defendants' *Motion to Dismiss for Lack of Personal and Subject Matter Jurisdiction* (Docket No. 11).   Judgment of dismissal

without prejudice is to be entered as to Extreme Electronics Corporation, Stephen Glascoe, Linda Glascoe and the conjugal partnership composed by both of them.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of July, 2017.

/s/ DANIEL R. DOMÍNGUEZ

DANIEL R. DOMÍNGUEZ
U.S. District Judge